**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

AUG 1 3 2013

CLE... U.S. ...
A....

BOARD OF TRUSTEES,                      )
SHEET METAL WORKERS' NATIONAL )
PENSION FUND,                           )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )    Civil Action No. 1:12-cv-18
                                        )
AEROMARK MECHANICAL, INC.,              )
                                        )
          Defendant.                    )

### MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for Entry of Judgment Awarding Liquidated Damages and Attorneys' Fees and Related Costs.

Plaintiff, Board of Trustees for the Sheet Metal Workers' National Pension Fund (the "Fund"), is a multiemployer defined benefit pension fund that brought suit on January 6, 2012 against Defendant Aeromark Mechanical, Inc. ("Aeromark"). Aeromark is a small, privately owned company with its principal place of business in New Jersey that entered into a collective bargaining agreement with Sheet Metal Workers' International Association Local Union 25 of Northern New Jersey ("CBA"). This CBA was entered into on or about April 28, 2008 and included the terms and conditions of Aeromark's participation in the Fund, including specifying that Aeromark was to make contributions to

1

the Fund retroactively from January 1, 2008 through August 31, 2010.  The Fund determined that on or about October 1, 2010, Aeromark effected a complete withdrawal from the Fund as defined in Section 4203 of ERISA, 29 U.S.C. § 1383.  On May 20, 2011, Aeromark received a Notice and Demand for payment of the withdrawal liability issued by the Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1).

Plaintiff sought to collect delinquent withdrawal liability in the amount of $22,242.92 owed to Plaintiff under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPAA"), 29 U.S.C. §§ 1001, et seq. (1982).  The Complaint also sought interest in the minimum amount of $1,071.20, liquidated damages in the minimum amount of $4,448.58, attorneys' fees, and costs pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

On January 22, 2013, Defendant sent the Fund a check for $25,060.82 which equaled the withdrawal liability plus interest owed through February 1, 2013.  At the Final Pre-Trial Conference on February 21, 2013, it was represented to this Court that the only issue remaining was an award of fees to Plaintiff.  Plaintiff is now seeking an entry of judgment awarding liquidated damages, attorneys' fees, and costs pursuant to ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2).  The Fund

requests entry of judgment in the amount of $4,448.58 in liquidated damages, $58,690.50 in attorneys' and other professional fees, and $3,858.12 in costs, for a total judgment of $66,997.20 against Defendant.

Defendant takes issue with any entry of judgment whatsoever asserting that: this lawsuit was unnecessary, the underlying case is now moot because Aeromark has paid the entire withdrawal amount and interest and therefore judgment cannot be entered (without which Defendant believes ERISA does not authorize the award of liquidated damages, attorneys' fees, or costs), and that the Fund waived its right to seek any damages, attorneys' fees, and costs inasmuch as it filed the instant lawsuit without satisfying the necessary prerequisites under both ERISA and the applicable CBA for this lawsuit. In addition, Defendant asserts the Fund has overstated the fees that it seeks and that the fees are unreasonable.

This case is an action for the recovery of withdrawal liability. For purposes of recovery under ERISA 502(g)(2), actions for withdrawal liability are treated as actions for the recovery of delinquent contributions. Section 4301 of ERISA provides:

> In an action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the

same manner as a delinquent contribution (within the meaning of section 515 [29 U.S.C. 1145]).

29 U.S.C. § 1451(b).  Further, regarding delinquent contributions, 29 U.S.C. § 1145 states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Under ERISA Section 502(g)(2), a delinquent employer is liable not only for delinquent contributions but also interest, liquidated damages, attorneys' fees, and costs in the event that a multiemployer fund files suit and recovers the contributions. 29 U.S.C. § 1132(g)(2).  Specifically, ERISA Section 502(g)(2) provides for actions involving delinquent contributions by stating:

> In any action under this title by a fiduciary for or on behalf of the plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan...(C) an amount equal to the greater of − (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent...of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant...

29 U.S.C § 1132(g)(2).

While the Fourth Circuit has yet to address the issue of whether a plaintiff is entitled to interest, liquidated damages,

4

and attorneys' fees and costs if a defendant pays the withdrawal liability/delinquent contributions after the suit is filed, other circuits have addressed this issue.  The majority position holds that payment of the principle does not affect the fund's right to collect interest, liquidated damages, and attorneys' fees and costs.  The Second Circuit reasoned that because Congress intended the remedial provisions of 502(g)(2) to have teeth, "an employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 502(g)(2) action brought to recover delinquent contributions."  Iron Workers Dist. Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505 (2d Cir. 1995).  In Hudson Steel, plaintiff filed a motion for summary judgment and the defendant paid the delinquent contributions in full - two days before the hearing.  Id.  The Second Circuit reversed the district court's ruling that the statutory penalties of 29 U.S.C. § 1132 apply solely to unpaid contributions on the date of judgment.  Id.

In this case, the Defendant paid the withdrawal liability and interest on January 22, 2013, but did not pay the liquidated damages or attorneys' fees and costs.  When contributions are paid before entry of a judgment, "the judgment under §

5

1132(g)(2) will necessarily reflect fewer than all of the forms of relief available under that provision if partial relief has been obtained by way of paid-up contributions." Id. at 1507. Accordingly, a judgment in this action should be entered in the total amount of the liquidated damages and attorneys' fees and costs and need not include the withdrawal liability and interest already paid.

Section 502(g)(2) was amended by Congress in 1980 to make the award of liquidated damages and attorneys' fees mandatory rather than discretionary in cases involving delinquent employers. The intent of Section 502(g)(2) is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies. Here, the Fund had to pursue legal action to recover the delinquent contributions.

The Third, Fifth, Seventh, Eighth, and Ninth Circuits have also determined that Section 502(g)(2) remedies apply to all contributions that are unpaid at the time a plan files suit, even if those debts are satisfied in whole or in part before judgment is entered. See e.g., UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 289 (3d Cir. 2007); Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co., 767 F.2d 1170, 1172 (5th Cir. 1985); Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d

645, 654 (7th Cir. 2001); Carpenters & Joiners Welfare Fund v.
Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988); Nw. Adm'rs,
Inc. v. Albertson's, Inc., 104 F.3d 253, 258 (9th Cir. 1996).

Regarding the amount of attorneys' fees to award,
applications for compensation are analyzed under a hybrid of the
lodestar analysis and a twelve-factor test which was first
expressed in Johnson v. Georgia Highway Express, Inc., 488 F.2d
714 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber
v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978).  In
calculating an award of attorneys' fees, a court must first
determine a lodestar figure by multiplying the number of
reasonable hours expended multiplied by a reasonable rate.
Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008).
In deciding what constitutes a "reasonable" number of hours and
rate, a district court's discretion should be guided by the
following twelve factors:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> out-set of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards
> in similar cases.

Robinson v. Equifax Info. Servs., 560 F.3d 235, 243-44 (4th Cir. 2009). The Court need not address all twelve factors independently because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983).

In calculating the lodestar, "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). In making this calculation, "the court must necessarily exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation." J.R. Lilienthal, 322 F. Supp. 2d at 670 (quoting Hensley, 461 U.S. at 434). The court's discretion to award fees necessarily encompasses the ability to depart from the lodestar in appropriate circumstances. Id. In exercising this discretion the court looks to the twelve Johnson factors. Robinson, 560 F.3d at 243-44.

After determining the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Grissom, 549 F.3d at 321 (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). Then the court awards some percentage of the remaining

amount, depending on the degree of success enjoyed by the plaintiff. Id.

Plaintiff has submitted declarations and time records to support the time expended and the rates sought. Sarah Naji, an associate from the law firm of Slevin & Hart, P.C., performed most of the legal work in this case by drafting the complaint, preparing and arguing a motion to dismiss a counterclaim, drafting and responding to discovery, preparing and arguing a motion for summary judgment, and preparing for trial. Mark Rifkind, a principal in the firm, provided supervision throughout the case and dealt with preparing for a deposition that was cancelled. Four legal assistants provided support during the case, James Cartales, Eva Shufflebarger, Joseph Mays, and Ruth Ann Mueller, whenever possible. Attorneys for the Fund spent approximately 231 hours on this case. The Court finds this amount of time to be excessive, considering that the Defendant paid the amounts due prior to extensive discovery and trial. Fifty percent of the time should be adequate to file the Complaint, participate in limited discovery, and petition for attorneys' fees and liquidated damages.

The community in which a court sits is the appropriate starting point for selecting the appropriate hourly rate. Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988). Plaintiff submitted the declaration of John Harney, an attorney

who practices ERISA litigation in the Eastern District of Virginia, in support of the rates sought.  Mr. Harney reviewed the billing records in this matter and states that the rates charged by the attorneys in this case are within the range of the prevailing market rates for similar practitioners in the Eastern District of Virginia.

Marc Rifkind's and Sarah Naji's billing rates are $290/hour and $260/hour, respectively.  The Defendant has not contested the reasonableness of Plaintiff's counsels' hourly rates and the Court finds that the rates for work performed in this matter are reasonable.  However, the fees requested will be reduced by fifty percent because of the excessive amount of hours as described above.

Pursuant to ERISA Section 502(g)(2), the Fund is entitled to recover reasonable costs as well.  The costs include charges for court filing fees, service of process, Lexis research, photocopying, Pacer research, and telephone calls in the amount of $3,858.12.  An appropriate Order shall issue.

                                    /s/
                                Claude M. Hilton
                            United States District Judge


Alexandria, Virginia
August  _13_ , 2013

                            10